**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

NOAH M. MILLER,               )
                                      )
Plaintiff,                  )
                                      )
vs.                          )
                                      ) NO. 2:13-CV-028
CAROLYN W. COLVIN, COMMISSIONER )
OF SOCIAL SECURITY,        )
                                      )
Defendant.                  )
                                      )

<u>**OPINION AND ORDER**</u>

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits to Plaintiff Noah M. Miller. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

<u>BACKGROUND</u>

On June 9, 2010, Noah M. Miller ("Miller") filed an application for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 *et seq.* Miller alleged that his disability began on February 13, 2009. The Social Security Administration ("SSA") denied his

initial application and also denied his claim upon reconsideration.

Miller requested a hearing, and on December 22, 2011, Miller appeared with his attorney at an administration hearing before Administrative Law Judge ("ALJ") Henry Kramzyk. Testimony was provided by Miller and vocational expert ("VE") Leonard M. Fisher. On December 29, 2011, the ALJ issued a decision denying Miller's claim, finding him not disabled because he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 25.)

Miller requested that the Appeals Council review the ALJ's decision, but that request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Miller has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).

DISCUSSION[1]

Facts

Miller was born in September 1979, and was 29 years old on the alleged disability onset date of February 13, 2009. (Tr.

---

[1] These facts have been borrowed liberally from the parties' briefs.

165.)  He has a high school education.  (Tr. 170.)  Miller's past relevant work includes employment as an assembler, carpenter, and final finisher.  (*See id.*)  Miller alleges the following impairments:  degenerative disc disease; essential tremors disease; arthritis; and knee and hip problems.  (Tr. 169.)

Medical Evidence

The medical evidence can be summarized as follows:

Prior to his alleged onset date, Miller suffered from low back pain and tremors in his hands.  (Tr. 253.)  In June 2007, Miller's orthopedic surgeon, Dr. Alan W. McGee, M.D., recommended physical therapy and pain medication for his back pain.  (Tr. 249-50.)

On January 15, 2008, Miller underwent an L4-5, L5-S1 bilateral decompressive laminotomies, foraminotomies, and fusion.  (Tr. 313.)  In April 2008, Miller told Dr. McGee that he was "doing exceptionally well" after surgery, though he had some low back pain.  (Tr. 301.)  Miller was prescribed Vicodin for pain, and was allowed to return to work with no restrictions.  (*Id.*)  In December 2008, Miller met with his primary care physician, Dr. James F. Hanus, D.O., regarding pain in his knee, and numbness in his right arm and hand.  (Tr. 259-61.)

From February 2009 to July 2010, Miller did not see a physician. (Tr. 19.) In July 2010, Miller received a physical consultative evaluation from Dr. Gina Moore Dudley, M.D. (Tr. 264-67.) Among other things, Dr. Moore Dudley recorded Miller's spinal fusion surgery and claims of tremors in his hands since age eight. (Tr. 264.) Miller told Dr. Moore Dudley that he could stand for three to four hours in an eight hour day, walk on level ground for a mile, sit for one hour, lift up to 25 pounds, and walk upstairs with difficulty. (Tr. 265.) Dr. Moore Dudley found that Miller's "ambulation was normal," his "gait was okay with no assistive device required for ambulation." (Tr. 266.) Dr. Moore Dudley provided, in part, the following functional assessment of Miller: stand and walk for at least six hours; sit without restrictions; "have no restrictions in terms of an assistive device as he did not require one;" lift and carry occasionally 50 pounds and frequently 25 pounds, with some decrease in his range of motion; have infrequent postural limitations secondary to his decreased range of motion; infrequently have some difficulty with bending, stooping and kneeling; and no manipulative or environmental limitations. (Tr. 266-67.)

On August 18, 2010, State agency physician Dr. Fernando Montoya, M.D., completed a Physical Residual Functional Capacity Assessment of Miller. (Tr. 269-76.) Dr. Montoya's assessment

of Miller's standing, walking and lifting limitations was the same as Dr. Moore Dudley's. (Tr. 270.) In addition, Dr. Montoya limited Miller to six hours of sitting in an eight hour day, and suggested the following postural limitations: never climbing scaffolding; and only occasionally balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs. (Tr. 271.) Dr. Montoya also suggested that Miller avoid uneven slippery surfaces and unprotected heights. (Tr. 273.) State agency physician, Dr. J. Sands, M.D., affirmed Dr. Montoya's opinion on December 21, 2010. (Tr. 277.)

In December 2010, Miller reported that the pain in his back was worse than it had been in August 2010, and that he was taking over-the-counter pain medications, which "help[ed] a little bit." (Tr. 192.) Miller also noted that he could stand for one hour and sit for 30 minutes. (*Id.*)

On February 15, 2011, Dr. Hanus conducted a physical exam of Miller. (Tr. 291.) Dr. Hanus noted that Miller had severe pain in his lower back that caused him to limp, and right leg pain. (*Id.*) Miller rated his pain as 8 out of 10. (*Id.*) Miller also complained of numbness and tingling in his hands and forearms, and that he was dropping objects. (*Id.*) Neurological testing revealed decreased grip strength in both hands, as well as Phalen and Tinel in both arms, indicating probable bilateral carpal tunnel syndrome. (*Id.*) The results of a straight leg

lifting test were negative. (*Id.*) Dr. Hanus recommended a magnetic resonance imaging ("MRI") of Miller's lumbosacral spine and an electromyography ("EMG") of both arms, but because Miller had "no insurance and no money coming in," they would delay these tests until Miller could pay for them. (*Id.*)

On March 18, 2011, an MRI of Miller's lumbar spine was performed that displayed post operative changes of posterior fusion at L4-5 and L5-S1. (Tr. 289.) It did not show recurrent disc bulge or herniation, central canal stenosis, lateral recess or foraminal stenosis. (*Id.*)

On March 30, 2011, Dr. Bhupendra K. Shah, M.D., performed an electromyogram ("EMG") on Miller. (Tr. 284.) The EMG results suggested a mild degree ulnar nerve entrapment of the right wrist and borderline to very minimal ulnar nerve entrap at the left wrist. (*Id.*) Because the changes were "very minimal at best," Dr. Shah recommended clinical correlation. (*Id.*)

On April 7, 2011, Miller underwent an MRI of his cervical spine, the results of which were "unremarkable" with minimal disc desiccation and disc bulge present in the mid-cervical spine with no encroachment. (Tr. 279-80.) In a letter to Dr. Hanus dated April 12, 2011, Dr. Shah noted that Miller walked with a limp, used a cane, and had mild tremors of his right hand. (Tr. 279.)

On May 11, 2011, Dr. Hanus completed a Medical Source Statement diagnosing Miller with severe and constant back pain and tremors. (Tr. 294-98.) Dr. Hanus determined that Miller was limited to sitting, standing and walking for less than one hour during an eight-hour work day, lifting ten pounds occasionally, and occasionally balancing, but never stooping. (Tr. 296-97.)

Dr. Hanus's treatment notes from June, July, and August 2011 document Miller's complaints of pain in his back and neck, and his right arm shakiness and muscle spasms. (Tr. 429-30.) Dr. Hanus prescribed Percocet for pain, as well as Valium and Zanaflex for the muscle spasms. (Tr. 429-31, 452.)

On or about November 1, 2011, neurologist Dr. Madhav Bhat, M.D., conducted a neurological examination of Miller, taking into consideration the results of Miller's prior MRI and EMGs. (Tr. 412-13.) Dr. Bhat concluded the examination results were "unremarkable," and attributed the pain in Miller's neck, right arm, and right leg to mechanical sources. (Tr. 413.) Miller's hand tremors were found to be "nonspecific." (*Id.*) Dr. Bhat recommended no other specific workup for Miller, but suggested that he would benefit from a vocational rehabilitation program. (*Id.*)

Miller testified that he last worked in February 2009, when he was laid off because his employer shut down. (Tr. 38.) He testified that he received unemployment benefits for "I believe nine months. I'm not entirely sure. I can't remember how long they lasted." (*Id*.) Miller explained that he cannot work due to his severe back pain, essential tremors, and acute carpel tunnel in both wrists. (Tr. 45-46.) Miller indicated that medications help for the pain for a short period of time. (Tr. 49.) He also lies down to alleviate his pain approximately four to five hours during an eight hour period each day. (Tr. 61-62.) Miller stated that his tremors prevent him from reading or inspecting something while he holds it. (Tr. 66.) He noted that he has numbness and tingling in his hands, and that medication did not help with the tremors. (Tr. 67-68.) Miller also testified that he cares for his son, does dishes, cooks, does laundry, shops, takes care of his personal needs, and visits with friends and family. (Tr. 51-55.)

Miller testified that he started using a cane approximately six months before the hearing "to help [him] get around." (Tr. 59-60.) According to Miller, the cane alleviates the pain on one side of his body and helps him with his balance problems. (Tr. 60.) During the hearing, the ALJ accepted evidence of a prescription from Dr. Hanus for a walking cane for Miller. (Tr.

34-35.) The prescription noted Miller's "short leg syndrome; neurological disorder effecting [right] arm [and] leg; trouble with balance." (Tr. 467.) Miller testified that if he wears specially made boots that accommodate his shorter leg, he doesn't necessarily need his cane, but he takes the cane with him. (Tr. 60.)

After Miller testified, the ALJ asked the VE to consider a hypothetical individual who was the same age as Miller and had the same work experience and education. (Tr. 74.) This individual could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds, and could only occasionally balance, stoop, crouch, kneel, and crawl. (Tr. 72.) He would have to avoid concentrated exposure to uneven and slippery surfaces and even moderate exposure to unprotected heights. (Tr. 72-73.) The ALJ asked the VE several questions about this hypothetical individual, using different limitations as to lifting, standing and walking. (Tr. 72-75.) The VE testified that the hypothetical individual could not perform Miller's past relevant work. (Tr. 73.)

The ALJ proposed an individual who could lift, carry, push and pull twenty pounds occasionally and ten pounds frequently, and could sit, stand, and walk for up to six hours a day. (Tr. 74.) The VE testified that this hypothetical individual could work as a school bus monitor (DOT # 372.667-042), school

crossing guard (DOT # 371.567-010), parking lot attendant (DOT # 915.473-010), office helper (DOT # 239.567-010) and encapsulator (DOT # 726.687-022). (*Id.*)

Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id*. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (noting "this deferential standard of review is weighted in favor of upholding the ALJ's decision"). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or reweighing the evidence. *See Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law *de novo*, and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for DIB benefits under the Social Security Act, the claimant must establish that he is disabled. 42 U.S.C. § 423(d)(1)(A). To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five-step evaluation:

Step 1:    Is the claimant performing substantially gainful activity?  If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2:    Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3:    Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1?  If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4:    Is the claimant able to perform his past relevant work?  If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

> Step 5:   Is the claimant able to perform any other
>           work within his residual functional capacity
>           in the national economy?  If yes, the claim
>           is denied; if no, the claimant is disabled.

*See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994).

In this case, the ALJ found that Miller had not engaged in substantial gainful activity since February 13, 2009, his alleged onset date. (Tr. 16.) The ALJ found that Miller suffers from the following severe impairments: post-operative changes of the lumbar spine, degenerative changes of the cervical spine, and atypical tremors. (*Id.*)

The ALJ further found that Miller did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 17.) The ALJ made the following Residual Functional Capacity ("RFC") determination:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) in that he can lift, carry, push and pull up to 20 pounds occasionally and up to 10 pounds frequently. He can sit for a total of up to 6 hours a day, stand and/or walk to a total of 6 hours per day. He can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, crouch, kneel, and crawl. The claimant would need to avoid concentrated exposure to uneven and slippery surfaces and would have to avoid even moderate exposure to unprotected heights.

(*Id.*)  Based upon Miller's RFC, the ALJ found that Miller is unable to perform his past relevant work as an assembler, carpenter, or final finisher.  (Tr. 23-24.)  However, the ALJ found that Miller is capable of performing other work that exists in significant numbers in the national economy, including work as school bus monitor, school crossing guard, parking lot attendant, office helper, and encapsulator.  (Tr. 24-25.)

Miller believes that the ALJ committed two errors requiring reversal.  First, Miller alleges the ALJ rendered an improper credibility determination.  (DE# 17 at 8-15.)  Second, Miller argues that the ALJ made an erroneous RFC assessment, thus presenting the VE with an incomplete hypothetical.  (*Id.* at 15-19.)

Credibility Determination

Miller claims that the ALJ failed to evaluate properly the credibility of Miller's testimony.  Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is "patently wrong."  *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  However, the ALJ must articulate specific reasons for discounting a claimant's testimony as being less than credible, and cannot merely ignore the testimony or rely solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility

13

determination. *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). The ALJ must make a credibility determination supported by record evidence and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight given to the claimant's statements and the reasons for that weight. *See Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003).

In evaluating the credibility of statements supporting a Social Security Application, the Seventh Circuit has noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). This ruling requires ALJs to articulate "specific reasons" behind credibility evaluations; the ALJ cannot merely state that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p. Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's statement including:

> 1.    The individual's daily activities;
>
> 2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3.    Factors that precipitate and aggravate the symptoms;
>
> 4.    The type, dosage, effectiveness, and side effect of any medication the individual

takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . . ; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003).

The ALJ considered each of these factors in assessing Miller's credibility. The ALJ addressed Miller's daily activities, and found them to be inconsistent with a debilitating impairment because they indicated that Miller was high functioning, active, independent, and capable of performing general chores without assistance. (Tr. 18-19, 21.) The ALJ considered Miller's medical records, and found that they did not indicate consistent complaints of pain because, at one time, over-the-counter medications alleviated his pain, but at another time, Miller described his pain as an "8 out 10." (Tr. 19-22.) The ALJ found that no factors greatly aggravate Miller's symptoms. (Tr. 22.) In evaluating the type, dosage, effectiveness, and side of effects of Miller's medications, the ALJ found that Percocet and Valium adequately relieved Miller's

15

pain without side effects. (*Id.*) The ALJ also noted that Miller's treatment "consists mainly of physician's visits and is void of any conservative physical therapy or recommendations for more invasive surgical intervention." (*Id.*) The ALJ discredited Miller's testimony that he naps frequently because the record did not indicate that naps were necessary to alleviate any of Miller's symptoms. (*Id.*)

In considering "other factors," the ALJ noted inconsistencies that detracted from Miller's overall credibility. (*Id.*) The ALJ pointed out that while Miller testified that he stopped working in February 2009, records indicate that he earned income in 2010, and collected unemployment in 2010, despite testifying otherwise. (*Id.*) The ALJ also considered the opinions of examining physicians Drs. Moore Dudley and Montoya, as well as Miller's treating physician, Dr. Hanus, in some detail. (Tr. 22-23.) Based on all of these factors, the ALJ found that Miller's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 19, 23.)

Miller argues that the ALJ erred by failing to properly consider Miller's subjective complaints of pain. Miller first maintains that when considering Miller's daily activities, the ALJ failed to differentiate between the exertion level required

for sporadic physical activity and full-time work. *See Carradine v. Barnhart*, 360 F.3d 751, 755–56 (7th Cir. 2004) (explaining that an ALJ cannot rely solely on the claimant's activities to support a conclusion that she is not disabled without showing how they translate to the ability to perform full-time work); *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012) (noting daily activities allow greater flexibility than full-time work, and have no "minimum standard"). The ALJ summarized Miller's daily activities as:

> preparing himself breakfast, dressing himself, hanging out with friends and family, spending time with his son, and performing daily chores around the house including laundry and occasionally mowing the lawn. He also testified that he cares for his son every other weekend and occasionally during the week and on holidays, cooks meals, does laundry, does the grocery shopping, and does not contend any problems with personal care. Beyond this, he testified that he visits with family, spends time with friends, watches television, goes out to dinner, takes his grandparent's [*sic*] shopping, spends time with his mother, is a member of the local Moose Club and attends meetings twice a month, reads the newspaper, uses the computer, and has no problem with the public or getting along with others.

(Tr. 18-19.) Contrary to Miller's allegation, the ALJ did not equate the exertion required for Miller's daily activities with full-time work. Rather, the ALJ found that "[t]hese activities do not seem to be the abilities of someone with a debilitating condition and further detract from the claimant's credibility in that he is alleging disability and an inability to work at any

17

exertional level." (Tr. 19; *see* Tr. 21 (noting Miller's daily activities "seem to indicate a high level of functioning and contradict his allegations" of a debilitating impairment).) An ALJ may "consider whether the claimant's daily activities are inconsistent with [his] stated inability to work." *Oakes v. Astrue*, 258 Fed. Appx. 38, 43 (7th Cir. 2007).

Moreover, Miller has not demonstrated that the ALJ's decision regarding his credibility was patently incorrect. This was not a matter of the ALJ concluding that Miller was able to perform full-time work because he periodically engaged in certain daily activities. As noted above, the ALJ also relied on medical evidence, statements relating to alleged pain, medical treatment, medications taken, and physicians' opinions to support his conclusion. *See Engle v. Colvin*, No. 1:13-cv-339, 2014 WL 6977691, *9 (N.D. Ind. Dec. 9, 2014) (affirming ALJ's decision where ALJ relied on several factors to support credibility determination). Even if the ALJ misconstrued the evidence of Miller's daily activities, the other evidence on which he relied was sufficient to support his conclusion that Miller's subjective complaints of pain were not entirely credible. *See Everaert v. Barnhart,* No. 03-C-0358-C, 2004 WL 1446173, *5 (W.D. Wis. Jun. 4, 2004) (affirming ALJ's decision where ALJ relied on evidence other than daily activities to support credibility determination).

Next, Miller contends that the ALJ erred in discrediting Miller's complaints of pain. Miller claims that his history of back pain is well documented over several years, and points to his treatments in 2007, including physical therapy, and his spinal surgery in early 2008. (DE# 17 at 14.) Miller also challenges the ALJ's finding that the treatment of his pain was "conservative."

The Court finds that the ALJ built the "logical bridge" between the evidence and his conclusions regarding Miller's credibility as to his pain. The ALJ acknowledged Miller's history of back pain prior to his alleged onset date, but noted that Dr. McGee's post-operative notes document Miller's exceptional recovery and only mild residual back pain. (Tr. 19.) The ALJ considered Dr. Hanus's treatment notes following Miller's surgery, which do not mention back pain after the procedure. (*Id.*) And while Miller complained of pain to Dr. Hanus in 2011, Dr. Hanus simply prescribed pain medication; he did not recommend any physical therapy or other conservative or invasive treatment. (Tr. 20.) Dr. Bhat's 2011 treatment notes indicate that Miller's right arm pain was mechanical, that the MRI showed no evidence of disc herniation or lumbar spinal stenosis, and there was no clinical evidence of cervical or lumbosacral radiculopathy or entrapment neuropathy. (*Id.*) Dr. Bhat recommended vocation rehabilitation, which indicated to the

ALJ that Miller has some ability to sustain employment. (*Id.*)
The ALJ noted that for pain relief, Miller has taken over-the-counter and prescription medications, but has not undergone any other form of treatment. (Tr. 21.) The ALJ also addressed inconsistencies in Miller's assertions regarding his level of pain: at one time, over-the-counter medications sufficed to alleviate pain, while another time, Miller rated his pain as an "8 out 10." (Tr. 21-22.) *See Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."). Thus, the ALJ relied upon ample evidence to support his findings that Miller's pain was not consistent, and that his treatment for pain was conservative. The Court finds that the ALJ properly supported his finding as to the credibility of Miller's complaints of consistent pain.

Finally, Miller argues that the ALJ's statement that Miller "was collecting unemployment [benefits] in 2010 in spite of testifying otherwise" is factually untrue. (Tr. 22.) The Court is precluded from reweighing evidence or determining issues of fact. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Instead, the Court is tasked with the limited issue of determining whether the ALJ's decision is supported by substantial evidence. Here, Miller testified that that he was laid off on February 13, 2009, and that he received unemployment

benefits for approximately nine months.  (Tr. 38.)  A nine month period that began in February (or even March) 2009 would have ended before January 2010.  Thus, the Court finds that Miller's hearing testimony adequately supports the ALJ's conclusion regarding Miller's unemployment benefits.[2]


The ALJ's RFC Determination

Miller argues that the ALJ made an erroneous RFC assessment by failing to incorporate all of Miller's relevant limitations, thus presenting the VE with an incomplete hypothetical.  Miller argues the ALJ failed to (1) incorporate the effect of Miller's pain on his ability to perform work-related tasks, (2) include the greater limitations for his hands in the RFC, and (3) address evidence that Miller needs to use a cane.  In response, the Commissioner maintains that the ALJ did not err because the

---

[2] Miller also asserts that the ALJ improperly considered his lack of medical care while he was unable to seek treatment due to lack of health insurance.  The Seventh Circuit disapproves of an ALJ's reliance on infrequent medical treatment where the claimant does not have health insurance and is incapable of paying medical bills.  *See Goins v. Colvin,* 764 F.3d 677, 679-80 (7th Cir. 2014) (criticizing credibility determination that held infrequent medical treatment against indigent claimant).  Here, the decision states that Miller was "not seen by a physician from February 2009 until July 2010, at which time he was referred for a physical consultative evaluation. . . ."  (Tr. 19.)  But the ALJ did not rely on Miller's gap in treatment as a basis for his credibility assessment.  Read in context, the ALJ's reference to this gap was merely part of the larger chronology of Miller's medical treatment.  (*See* Tr. 19-21.)

VE identified a significant number of jobs that could be performed by someone with Miller's limitations.

In making an RFC finding, the ALJ must describe why a claimant's reported limitations were inconsistent with the evidence in the record. *See* SSR 96–8p; *Pepper v. Colvin,* 712 F.3d 351, 363 (7th Cir. 2013). The ALJ must build the necessary "logical bridge" between the evidence and his conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Moreover, the ALJ must orient the VE to the totality of the claimant's limitations. *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). "Hypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record." *Steele*, 290 F.3d at 942 (emphasis in original); *Young v. Barnhart,* 362 F.3d 995, 1003 (7th Cir. 2004).

The Court rejects Miller's assertion that the ALJ erred by failing to consider the effect of Miller's pain on his ability to perform work-related tasks. An ALJ is "required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). As explained above, the ALJ's decision addressed Miller's complaints of consistent pain and provided reasons for discrediting them. Therefore, the ALJ was

justified in not including greater limitations based on Miller's pain in the RFC.

Miller also asserts that the ALJ should have included greater limitations for his hands in the RFC. However, the ALJ considered Miller's claims relating to his hands and limited Miller's RFC accordingly. (Tr. 20-21.) The decision notes that neurological testing by Dr. Hanus in February 2011 found decreased grip strength in both hands, but no indication of the degree of decrease. (Tr. 20.) Dr. Hanus documented Miller's complaints of tremors, but an EMG of Miller's right arm in March 2011 was "essentially normal" and that Miller's "symptoms were minimal at best." (Tr. 20-21.) The results of Miller's comprehensive nerve testing were "normal," possibly suggesting "mild degree of ulnar nerve entrapment at the right wrist and possible borderline to very minimal ulnar nerve entrapment in the left wrist. . . . [E]ven Dr. Shah indicated that these changes were very minimal at best." (*Id.*) According to Dr. Bhat, the results of neurological testing in November 2011 were "unremarkable." (Tr. 21.) Dr. Bhat found that Miller's hand tremors were nonspecific and there was no entrapment, and that an MRI of the brachial plexus was normal. (*Id.*) The decision states that "[g]iven the conclusive nature of Dr. Bhat's findings, and the tests conducted by Drs. Hanus and Shah," the ALJ gave Miller "the benefit of the doubt and limit[ed] his

[RFC] accordingly." (*Id.*) It is not for this Court to reweigh this evidence or resolve conflicts in the record. *See Young*, 362 F.3d at 1001 ("Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner."). The Court finds that the ALJ adequately supported the RFC determination regarding Miller's hands.

Regarding Miller's use of a cane, the Court finds that the ALJ's failure to address this evidence requires remand. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Courts in this Circuit have found that failure to address a claimant's use of a cane requires remand. *See Thomas v. Colvin,* 534 Fed. Appx. 546, 550 (7th Cir. 2013) (remanding where ALJ failed to discuss adequately claimant's alleged need to use a cane); *Oplinger v. Colvin*, No. 13-cv-642, 2015 WL 326809, at *6 (N.D. Ill. Jan. 23, 2015) (same).

> The error . . . is not that the medical evidence *required* the ALJ to find that [the claimant] needed a cane to stand and walk, but that the ALJ failed to consider the issue at all, leaving us without a finding to review. We cannot uphold the ALJ's decision based on a reason that the ALJ did not articulate.

*Thomas,* 534 Fed. Appx. at 550 (emphasis in original) (citing *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) and *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011)).

Here, the decision does not reference Miller's use of a cane at all. While the decision mentions that Dr. Moore Dudley found Miller could walk "without the need of any assistive devices" in July 2010 (Tr. 19), the record indicates that Miller was using a cane in April 2011 (Tr. 279), and that Dr. Hanus prescribed a cane for Miller in November 2011 for Miller's short leg syndrome, his neurological disorder effecting right arm and leg, and his trouble with balance. (Tr. 467). At the hearing, Miller testified that he began using a cane to help him get around, and that the cane alleviates the pain on one side of his body and helps him with his balance problems. (Tr. 60.) As noted above, the decision discredits Miller's testimony on other issues, but it does not address his testimony regarding his use of a cane. Relying on prior medical evaluations and generally discrediting Miller's testimony without addressing his use of a cane is not sufficient to build the necessary "logical bridge" between the evidence and the ALJ's conclusions. *See Thomas,* 534 Fed. Appx. at 550 (citing *Terry*, 580 F.3d at 475).

Furthermore, the ALJ limited the VE to the particular facts of the hypotheticals along with Miller's age, education, and work history, but did not incorporate the use of a cane into any

25

of the hypotheticals. By the nature of the questioning, the VE was prohibited from considering physical limitations he might have absorbed either through reviewing the evidence on the record or by listening to Miller's hearing testimony. *See Young*, 362 F.3d at 1003. Because the ALJ failed to consider Miller's use of a cane, **REMAND** is required.

CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).


**DATED: April 24, 2015**          **/s/ RUDY LOZANO, Judge**
                                   **United States District Court**